916 F.2d 710
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
ANTONIO ROMANO; KATHRYN ROMANO, Plaintiffs-Appellants,
v.
LIBERTY MUTUAL INSURANCE COMPANY, a Massachusetts
Corporation, Defendant-Appellee.
 No. 89-1497
 United States Court of Appeals,
Fourth Circuit.
 Argued: February 9, 1990
Decided: October 24, 1990
 
 Appeal from the United States District Court for the Northern District of West Virginia, at Clarksburg. Robert Earl Maxwell, Chief District Judge. (CA-85-253-C)
 ARGUED: Brent E. Beveridge, Fairmont, West Virginia, for Appellants.
 Alvin Lee Emch, JACKSON & KELLY, Charleston, West Virginia, for Appellee.
 ON BRIEF: Stephen R. Brooks, FURBEE, AMOS, WEBB & CRITCHFIELD, Fairmont, West Virginia, for Appellants.
 Mark A. Mangano, JACKSON & KELLY, Charleston, West Virginia, for Appellee.
 Before WIDENER and WILKINSON, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 WIDENER, Circuit Judge:
 
 
 1
 Antonio and Katherine Romano appeal the district court's grant of summary judgment to Liberty Mutual Insurance Co. The case was heard previously by this court in which we reversed the lower court's grant of summary judgment in favor of Liberty Mutual in an unpublished opinion. On remand, Liberty Mutual again moved for summary judgment and the district court granted the motion. Upon review, we affirm in part, vacate in part, and remand with instructions.
 
 
 2
 Terra Alta Development, Inc. (Terra Alta) is a West Virginia corporation which, at the time pertinent to this litigation, was in the business of developing real estate near the city of Clarksburg, West Virginia. Terra Alta sold unimproved lots to buyers who intended to build houses on the property. As well, it sold lots with completed houses thereupon. The corporation was closely held and its principal owners were Maurice Libert and Charles Hart. Libert looked after the sales of the lots in addition to the management and supervision of construction activities.
 
 
 3
 The Romanos purchased a lot from Terra Alta in June of 1978 and began construction in July of that year. In May of 1981, the Romanos began to notice structural defects in their house. The house was uninhabitable by early 1982.
 
 
 4
 The Romanos brought suit against Terra Alta, Libert, and Hart in the circuit court of Harrison County. The complaint alleged that Terra Alta, through its officers, misrepresented the condition of the subsoil of the lot and its fitness for the intended purpose of building a house. A verdict was directed for Hart. A jury returned a verdict against Terra Alta and Libert. It found that Libert intentionally misrepresented the condition of the subsoil of the lot and that Terra Alta authorized and condoned or ratified the conduct. The jury awarded the Romanos $89,800 compensatory damages and $100,000 punitive damages. Judgment was entered on the verdict. Unable to satisfy the judgment against Terra Alta or Libert, the plaintiffs brought suit in a West Virginia state court against Liberty Mutual. The substance of their claim was that Liberty must pay for the damage to the lot and the house as a result of a comprehensive general liability insurance policy issued in November of 1977. The policy insured Terra Alta or any executive officer, director, or stockholder while acting within the scope of his duties.
 
 
 5
 Liberty Mutual removed the case to federal court and both parties moved for summary judgment. The magistrate had recommended that the Romanos' motion for summary judgment be denied while Liberty's motion for summary judgment should be granted. The ground for granting Liberty's motion was that Libert's intentional misrepresentation did not constitute an "occurrence" within the meaning of the policy. The district court adopted the magistrate's opinion. On appeal, we reversed in an unpublished opinion. Romano v. Liberty Mutual Insurance Co., 854 F.2d 1317 (table) (4th Cir. 1988). We did not agree with the district court's construction of the term "occurrence" and accordingly remanded to the district court without addressing the other theories asserted in support of summary judgment.
 
 
 6
 On remand, Liberty Mutual again filed a motion for summary judgment. Again the magistrate recommended that summary judgment should be entered for Liberty Mutual; this time because "the policy excluded coverage for damage to premises alienated by the insured arising out of such premises or any part thereof." Because the lot was alienated when it was sold to the Romanos and the damage occurred after the lot was alienated, the exclusion, the magistrate held, prevented recovery. An additional ground Liberty asserted in support of summary judgment was that the damage to the plaintiff's property arose out of a "completed operation" for which Terra Alta did not have coverage. The magistrate found that the Romanos had admitted that the lot sold to them was part of Terra Alta's completed operations as that term is defined in the policy. Thus, he concluded, that "if the policy provided no coverage for damages arising out of completed operations, the defendant [Liberty] is entitled to summary judgment." However, he denied summary judgment in favor of Liberty Mutual on this ground because he could not determine if this coverage, completed operations, was in effect. The district court adopted the magistrate's recommendation on July 7, 1989. From that order, the Romanos appeal.
 
 
 7
 It is of some consequence at this point to note what the magistrate decided, because his recommendations were followed by the district court.
 
 
 8
 He decided first that there is no public policy in West Virginia against affording coverage under a policy of liability insurance for the intentional wrongdoing of an insured.
 
 
 9
 Second, he decided that there is no liability under the policy because of the exclusion of the alienated premises clause.
 
 
 10
 Third, he decided that Liberty Mutual's motion for summary judgment on the ground that there was no coverage for completed operations should be denied because of insufficient proof.
 
 
 11
 No exception was taken to the first and third holdings of the magistrate mentioned just above, so they are the law of the case. The Romanos, however, argue that while there is liability under the completed operations hazard, that liability exists otherwise under the policy.
 
 
 12
 With respect to the second holding concerning the alienated premises clause, the parties are in at least partial agreement on its meaning, and perhaps full agreement. That clause excludes from coverage of the policy "property damage to premises alienated by the named insured arising out of such premises or any part thereof." The magistrate and the district court held that this clause excluded all liability under the policy. Liberty Mutual, however, now concedes that the alienated premises clause of the policy does not exclude damages to the house constructed by the Romanos but maintains that clause yet excludes damages to the lot. This construction of the policy is apparently agreed to by the Romanos. Liberty Mutual's brief at 16; Romanos' reply brief at 3.[1] Even if it may be said that the Romanos do not agree that the alienated premises clause excludes damages to the lot, the case of McGann v. Hobbs Lumber Co., 145 S.E.2d 476 (W. Va. 1965), settles that question. At 145 S.E.2d at 480, in constructing a similar clause, the court quoted favorably from Liberty Building Co. v. Royal Indemnity Co., 346 P.2d 444, 447 (Cal. App. 1959), as follows:
 
 
 13
 This exclusion means that the policy will not protect the insured if he has to repair or replace some product or work which proved defective and caused an accident. The exclusion has no reference to liability for damage to other property or personal property arising out of such accident.
 
 
 14
 (Emphasis in original.)
 
 
 15
 That quotation applied to this case simply means that any damages to the lot are excluded from coverage by the policy, but that damages which may have been caused to the house because of the defective condition of the lot are not excluded.
 
 
 16
 The magistrate found in his report that the plaintiffs have admitted that the lot sold to them was a part of Terra Alta's completed operations as that term is defined in the insurance policy. While the plaintiffs agree that this transaction is within the completed operations coverage of the policy, they argue for broader coverage under the "premises operations" hazard. Liberty Mutual admits that any damages to the house in question in this case are covered under the completed operations hazard provisions of the policy. Liberty Mutual's brief at 16. An examination of the definitions in the policy under "completed operations hazard" indicates that the acts complained of are covered under the completed operations hazard. So we are of opinion and hold that the acts complained of are covered under the completed operations hazard coverage of the policy.
 
 
 17
 We have thus decided, either in this opinion or in our previous opinion in this case, all the issues put to us squarely by the parties. The question remains as to how the case should be treated on remand. At this juncture, we should say that we do not have to comment on the magistrate's declining to grant time to procure the affidavit of the expert Neville. That is so because the case must be remanded in any event. From Neville's stated professional qualifications, he was a highly qualified expert, and the substance of his affidavit was most relevant to the question of coverage in this case. On remand, either the affidavit or testimony from Neville of like effect should be admitted, depending on the posture of the case. How such evidence should be treated is, of course, initially up to the trier of fact.
 
 
 18
 The first thing the district court must decide on remand is whether or not there was an "occurrence" within the terms of the policy, because if there was no "occurrence," there is no coverage in any event. We especially invite the attention of the district court to pages 4 and 5 of the slip opinion in the previous case, No. 88-1526.
 
 
 19
 If the district court determines that there has been an "occurrence" within the meaning of the policy, it must then consider whether there is policy coverage. The most direct way to get to this question is to consider the case under the completed operations hazard. That is so because both Liberty Mutual and the plaintiffs have admitted that the acts complained of fall under the completed operations hazard, and we agree. Liberty Mutual denies that the policy was written to include that coverage because it was not separately billed. The plaintiffs contend to the contrary. The plaintiffs' expert, Neville, is of opinion that there was coverage, and in this respect, we note that there is no policy exclusion by way of endorsement or otherwise which would indicate that coverage for completed operations is excluded. If the district court determines that completed operations coverage was in effect, then the only thing left to ascertain is the damage to the house as distinguished from damage to the lot or damage to the house and lot together.
 
 
 20
 Should the district court ascertain, however, that there is no coverage under the completed operations hazard of the policy, it must then ascertain whether or not there is coverage in any event, that is to say, whether the admitted property damage to the plaintiffs' house was "caused by an occurrence" within the meaning of the policy. See our previous slip opinion, No. 88-1526, at 3. Plaintiffs and Liberty Mutual have each cited authority tending to show either coverage, without depending on the completed operations hazard, or no coverage under the same conditions, but that question has not been directly decided by a court in this case when the question was fairly put. It is true that in our previous opinion, on pages 4 and 5, we may have indicated in dictum that there was such coverage, but the question before us then was whether or not the decision of the district court defining "occurrence" was correct, not whether coverage existed. If the district court reaches this point and finds there is no coverage, that is the end of the case; if there is, then damages should be ascertained as mentioned above.
 
 
 21
 The judgment of the district court is accordingly
 
 
 22
 AFFIRMED IN PART, VACATED IN PART,
 
 AND REMANDED WITH INSTRUCTIONS
 
 
 [1]
 Oral argument confirmed our conclusion as to Liberty Mutual